Allen V. KENNEDY, on behalf of himself and all other persons similarly situated, other than defendants who purchased Class A common stock of Preferred Land Corporation on or after June 23, 1967, and before January 1, 1971, Plaintiff-Appellee,

v.

Fred C. TALLANT, Sr., William M. Womack, Jr., and C. Jon Erwin, Defendants-Appellants.

No. 78–2167.

United States Court of Appeals, Eleventh Circuit.

July 28, 1983.

712

E. Lewis Hansen, Atlanta, Ga., C. Patrick Flynn, Nashville, Tenn., Carl T. Shipley, Washington, D.C., for defendants-appellants.

Thomas E. Skinner, Birmingham, Ala., Thomas H. Seymour, Miami, Fla., for plaintiff-appellee.

Before KRAVITCH and HENDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

LEWIS R. MORGAN, Senior Circuit Judge:

The District Court for the Southern District of Georgia concluded that appellants Fred C. Tallant, Sr., and William M. Womack, Jr., violated Rule 10b–5, as adopted and promulgated by the Securities Exchange Commission pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), in connection with the sale of class A common stock of the Preferred Land Corporation (PLC). This appeal challenges the district court's conclusion on several grounds. We affirm.

Tallant, Womack, and C. Jon Erwin promoted and organized PLC under Georgia Law in early 1967 for the stated purpose of buying, selling, and developing real estate. The corporation's charter authorized the issuance of ten million shares of common stock with a par value of five cents ($.05) per share. These shares were divided into eight million shares of class A common stock and two million shares of class B common stock. Salesmen employed by PLC offered class A stock exclusively to citizens of Georgia over a period of some five years. During this period, there were seven separate offerings of the class A stock. The first offering was sold at ten cents ($.10) per share, and the price increased with each additional offering until the final offering was sold at five dollars ($5.00) per share. Each offering was accompanied by a prospectus. Eventually over seven million shares of the class A stock were sold for a price in excess of twelve million dollars. The class A stockholders elected two of the five members of the PLC board of directors. The remaining three board members were elected by the class B common stockholders. Tallant, Womack, and Erwin originally owned the only issued class B common stock for which they paid a total consideration of approximately five thousand dollars. Stock dividends were never paid by PLC.

Allen V. Kennedy, the named plaintiff below, purchased one thousand shares of class A common stock at two dollars ($2.00) per share in January of 1969. He purchased an additional two hundred shares at five dollars ($5.00) per share in May of 1970. He was approached by a salesman employed with PLC and given a prospectus each time, although he never read the prospectuses before purchasing the stock. In December of 1972, Kennedy read an article in the *Atlanta Journal* newspaper which questioned the legitimacy of PLC and appellants' activities.

Kennedy initiated this action on September 11, 1973, seeking recision of all PLC class A stock purchases for himself and all

others similarly situated. His amended complaint alleged that the defendants, Tallant, Womack, Erwin, and PLC, entered into an unlawful conspiracy, plan and scheme "to defraud the public . . . and to enrich themselves by the sale of securities" in violation of Section 10b and Rule 10b–5. In support of his claim, Kennedy further alleged that the defendants committed the following acts: (1) the charter and by-laws of PLC were shrewdly drafted to permit the defendants to retain indefinite control over the corporation; (2) the defendants gained sixty percent of the voting power of the stockholders at a cost of less than $4/100$ ths of one percent of the contributed capital; (3) the prices at which the class A stock were sold in the seven separate offerings were artificially and fraudulently inflated; (4) the artificial and fraudulent pyramiding of stock prices was designed to induce the public to believe the stock had actually increased in value when in fact the value remained the same; (5) the defendants concealed from the public their plan to retain indefinite control over PLC; (6) the defendants concealed from the public that they had gained control of PLC through a nominal investment; (7) the seven prospectuses issued by PLC were designed to mislead and confuse the public; (8) the defendants used PLC's manpower, sales organization, and facilities to organize and promote fourteen additional Georgia corporations which sold stock in the same manner as PLC; (9) Tallant received stock sales commissions from each of the fourteen additional corporations; (10) Tallant and his family owned corporation received substantial management and consultant fees from PLC and the other corporations; and (11) the defendants concealed their activities with regard to the other corporations from PLC's class A stockholders.

The trial court certified this suit as a class action in August of 1974 on behalf of "all purchasers of class A common stock of defendant Preferred Land Corporation who bought on or after June 23, 1967, and before January 1, 1971, and who before or at the time of their purchase received one or more of the prospectuses or other promotional material alleged to be fraudulent as specified in plaintiff's complaint." In June of 1976 the district judge denied a motion by appellants to dismiss for failure to state a claim. After three years of discovery and pretrial hearings, the liability issues were finally tried before the district judge with the assistance of an advisory jury empaneled pursuant to Fed.R.Civ.P. 39(c). The advisory jury answered each of fifty-two special interrogatories in favor of Kennedy and against the defendants. On October 22, 1976, the trial court entered its findings of fact and conclusions of law with respect to the liability of all defendants. Having found that they were liable as charged, the trial court proceeded to a determination of damages. In May of 1979, it entered a final judgment against PLC and the individual defendants and awarded damages to the plaintiff class of over eight million dollars plus interest.[1]

In this appeal, Tallant and Womack raise four issues: (I) whether Kennedy's claim was barred by the applicable statute of limitations; (II) whether the district judge erred in certifying this suit as a class action; (III) whether the district judge erred in denying appellants' motion to dismiss for failure to state a claim; and (IV) whether crucial findings of fact made by the district judge are clearly erroneous.[2] After reviewing the relevant portions of over six thousand pages of record in this case, numerous

1. In addition to this private civil action, Tallant and Womack were indicted on criminal charges arising from their relationship with PLC. Both men pled nolo contendere. *See United States v. Tallant,* 407 F.Supp. 896 (N.D.Ga.1975), *aff'd* 547 F.2d 1291 (5th Cir.1977).

2. Appellants also argued in their briefs and at oral argument that the district court erred by using a "preponderance of the evidence" test

as opposed to a "clear and convincing proof" standard in weighing the evidence against the claims in this suit. Since we have taken this appeal into consideration the Supreme Court decided *Herman & MacLean v. Huddleston,* ⸺ U.S. ⸺, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983), in which it held that a "preponderance of the evidence" standard is the proper test in a Section 10b action.

exhibits, and the applicable law, we find no merit to any of these claims.

## I

We begin our discussion of the issues in this appeal by addressing appellants' concerns over the statute of limitations. The statute of limitations in a Section 10(b) action is taken from the state law remedy which bears the closest resemblance since the federal securities laws do not establish a specific time period in which an action must be filed. *Sargent v. Genesco Inc.,* 492 F.2d 750 (5th Cir.1974). In the present case, the parties agree that the district court properly recognized the applicability of a two-year statute of limitations provided by Georgia law for the recision of a fraudulent sale of securities. *See Diamond v. Lamotte,* 709 F.2d 1419 (11th Cir. 1983); Official Code of Ga.Ann. §§ 10–5–12, 14 (Michie 1982), Ga.Code Ann. §§ 97–112, 114 (Harrison 1981). Although the time period itself is taken from state law, the time at which the action accrues and the statute begins to run is a question of federal law. *Hudak v. Economic Analysts, Inc.,* 499 F.2d 996 (5th Cir.1974). Therefore, the two-year statute of limitations applicable here began to run against Kennedy at the point in time when he had actual knowledge of the fraud or notice of facts which would lead to actual knowledge in the exercise of due diligence. *Azalea Meats, Inc. v. Muscat,* 386 F.2d 5 (5th Cir.1967).

Appellants claim that the prospectus Kennedy received when he made his final purchase of PLC stock contained sufficient information to place him on notice of the acts over which he now complains. This occurred in May of 1970 and Kennedy's original complaint was not filed until October 3, 1973, over three years later. Therefore, according to appellants, Kennedy's claim was not timely filed. Kennedy responds that he was not on notice of any

fraud until December of 1972 when an article regarding appellants' management of PLC appeared in the *Atlanta Journal,* and thus the two-year statute of limitations did not begin to run until that time. The district court reviewed these arguments and submitted the matter to the advisory jury since questions of notice and due diligence are particularly suited for a jury's consideration. *Azalea Meats, Inc. v. Muscat,* 386 F.2d at 9. The advisory jury answered affirmatively to the following interrogatory:

> Do you find from a preponderance of the evidence, under the circumstances of this case, that the defendants artfully concealed from the plaintiff and the other purchasers of PLC's Class "A" common stock fraudulent conduct, if any, and that the plaintiff filed this suit within two years from the date such fraudulent conduct was discovered or could have been discovered by the exercise of due diligence?

Record, vol. 16, at 3982, question no. 47. The district judge adopted this finding of fact and concluded as a matter of law that Kennedy's complaint was timely filed.[3] We find an abundance of evidence in the record to support this conclusion. The PLC stock offerings and sales were part of a complex scheme to defraud the public. Appellants exerted great effort concealing their fraudulent purposes and Womack even went so far as to falsify corporate documents. The prospectuses contained no clear statement or explanation of the facts which support Kennedy's claim. The record simply is void of any articulable event which should have made Kennedy and the other class members question the legitimacy of appellants' activities prior to the December 1972 newspaper article. Accordingly, the district court

---

**3.** The district judge concluded that there is an alternative basis for finding Kennedy's suit was commenced within the two-year statute of limitations. He found that appellants operated a continuing scheme of fraud by selling PLC stock through an integrated offering which ceased in May of 1972, less than two years before this suit was filed. Because we affirm the district court's decision for the reasons above, it is unnecessary for us to review or discuss this alternative theory.

properly rejected appellants' statute of limitations defense.[4]

## II

Appellants argue that the district judge abused his discretion and erroneously certified this suit as a class action. They cite two reasons for the alleged error. First, appellants contend that Kennedy's claim against them is not typical of the class as required by Rule 23(a)(3) of the Federal Rules of Civil Procedure.[5] Kennedy is an experienced investor who admits never reading the PLC prospectuses and did not rely on them when purchasing PLC stock. The other class members are investors of varied proficiency, many of whom read and relied on the prospectuses. According to appellants, this is a crucial distinction which renders Kennedy's claim atypical. We disagree. Kennedy's claim is not an individual, separate grievance. His amended complaint alleged that appellants entered into an unlawful conspiracy to defraud Georgia citizens through PLC stock offerings. He further alleged that appellants committed various illegal acts in perpetrating the fraud, including the failure to disclose material facts in the PLC prospectuses. In other words, Kennedy claimed and later proved that appellants committed the same unlawful acts in the same method against an entire class. Thus, all members of this class have identical claims. The degree of investment experience or sophistication of each of the class members is irrelevant. *See Hill York Corp. v. American International Franchises, Inc.,* 448 F.2d 680 (5th Cir.1971). Likewise, the degree of reliance placed on the prospectuses by the various class members is not a controlling element of the action. *See Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied,* —— U.S. ——, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). In short, we find no material variation between Kennedy's claim and the claims of the other class members. Therefore, certification of the suit as a class action satisfied the requirements of Rule 23(a)(3). *See Green v. Wolf Corporation,* 406 F.2d 291 (2nd Cir. 1968), *cert. denied* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Tallant and Womack also challenge the district court's finding that certification of the class was appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure. That rule requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members...." In the present case, the common issues of conspiracy, fraud, and material omissions are clear. Appellants argue, however, that the benefits of a class action are outweighed here because of three questions which affect the individual class members: (1) whether the class members bought their PLC stock under materially different circumstances because of a likely variance in oral representations made by the 94 different salesmen; (2) whether each class member received a prospectus prior to or at the time of his stock purchase; and (3) whether any of the class members are barred from pursuing their claim because of the applicable statute of limitations. We find this argument meritless. The substance of the oral representations made by the various

---

**4.** Tallant and Womack alternatively argue that even if the statute of limitations did not begin running until December of 1972, Kennedy's claim still should be barred by the equitable doctrines of laches, estoppel, and waiver since he waited until October of 1973 to commence this action. We find, as did the advisory jury, that this argument is wholly without merit. *See* Record, vol. 16, at 3982, question no. 48. There is no evidence of inexcusable delay on the part of Kennedy nor prejudice to the appellants by the filing of this suit in October of 1973. *See Gardner v. Panama Railroad Company,* 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951).

**5.** Fed.R.Civ.P. 23(a) states:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

salesmen is not an issue in this suit. *See Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968), *cert. denied* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). Likewise, appellants have failed to demonstrate how the class members would be individually affected by determining the precise time they each received one of the questionable prospectuses. Of course, each of the class members must have received at least one prospectus in order to qualify as a member of the class. Finally, for the reasons stated in Section I of this opinion, there is not a statute of limitations issue requiring individual consideration. We note that even if some of the class members were threatened with a potential statute of limitations defense, that problem would not necessarily defeat the availability of a class action suit. *See Lamb v. United Security Life Company,* 59 F.R.D. 44 (S.D.Iowa 1973); *Cohen v. District of Columbia National Bank,* 59 F.R.D. 84 (D.C.1972); *Zeigler v. Gibraltar Life Insurance Company of America,* 43 F.R.D. 169 (D.S.D.1967).

Appellants mistakenly rely on *King v. Sharp,* 63 F.R.D. 60 (N.D.Tex.1974), in arguing this issue. That case denied certification of a class because of significant variations in the alleged misrepresentations and different common law standards caused by the geographical locations of the asserted class members. These considerations are not a part of the present controversy. Indeed, we find that this suit involving a single conspiracy and fraudulent scheme against a large number of individuals is particularly appropriate for class action. Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts. *See Korn v. Franchard Corporation,* 456 F.2d 1206 (2nd Cir.1972); *Green v. Wolf Corporation,* 406 F.2d 291 (2nd Cir.1968), *cert. denied* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Frankel v. Wyllie and Thornhill, Inc.,* 55 F.R.D. 330 (W.D.Va.1972).

### III

Tallant and Womack challenge the district court's order denying their motion to dismiss for failure to state a claim. They argue that Kennedy's amended complaint alleged no more than simple corporate mismanagement, and accordingly the alleged acts are beyond the reach of federal regulation.[6] *See Superintendent of Insurance v. Bankers Life & Casualty Company,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). We disagree. The amended complaint alleged that appellants knowingly "entered into an unlawful conspiracy, plan and scheme . . . to defraud the public and the citizens of the State of Georgia . . . and to enrich themselves by the sale of securities in violation of Section 10(b) of the Securities Act of 1934 and Rule 10b–5 adopted pursuant thereto." It further alleged specific "acts, practices and courses of business which operated as a fraud and deceit upon the Plaintiff and others similarly situated," which included claims of material omissions in all of the prospectuses issued by PLC and claims of fraudulent pyramiding of stock prices. We believe it would be difficult to better allege a cause of action under Rule 10b–5(1) or (3).[7] *See Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981)

---

6. Within this same issue, appellants argue that the alleged omitted material facts were actually included and disclosed in each prospectus. This question is not properly raised in the context of a motion to dismiss for failure to state a claim. Appellants are challenging the truth of Kennedy's allegations and ask us to examine matters beyond the pleadings. Fed.R.Civ.P. 12(b)(6); *Oaxaca v. Roscoe,* 641 F.2d 386 (5th Cir.1981).

7. Rule 10b–5, 17 C.F.R. § 240.10b–5, provides in part:

It shall be unlawful for any person, directly or indirectly, . . .

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

(en banc), *cert. denied,* —— U.S. ——, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). Appellants were charged with specific acts of intentional fraud in the sale of securities, not mere corporate mismanagement. This is precisely the conduct proscribed by Section 10(b) and Rule 10b–5. Therefore, the district court properly denied the motion to dismiss for failure to state a claim. *See Sante Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

## IV

Finally, appellants challenge findings of fact made by the district judge. First, they claim that the eight separate material facts which the district judge found to be omitted from the prospectuses are in error. These eight omissions are: (1) Tallant and Erwin received override commissions on the sale of PLC class A common stock; (2) Tallant, with the aid of Womack and Erwin, organized and controlled ten corporations whose start-up capital was furnished by PLC, and Tallant or his family corporation received stock sales commissions and fees for public relations, management consulting, and bookkeeping services from these corporations; (3) PLC sold a substantial amount of its class A stock to the public on an installment basis and any stock not fully paid was foreclosed by PLC and resold to the public as original issue stock; (4) PLC paid its stock salesmen commissions on the gross amount of the stock sales rather than on the cash received in violation of Georgia law, and the commission and selling expenses exceeded fifteen percent of the stock's selling price; (5) Tallant and his companies traded in and made substantial profits on the purchase and resale of PLC class A common stock; (6) PLC made a fictitious sale of two hundred thousand shares under its class A three dollar par value common stock offering for five hundred and twenty-eight thousand dollars; (7) PLC substantially overstated its stockholder's equity in the financial statements included in each of PLC's last six prospectuses; and (8) Tallant, Womack, and Erwin, gained control of PLC by the purchase of class B common stock, thereby enabling them to perpetuate themselves in office and control as long as they desired.

▇ Tallant and Womack argue that findings (4) and (7) are not supported by any evidence in the record. We disagree. One of PLC's former stock salesmen, Jake W. Martin, testified that he received over fifteen percent commission on each sale of stock and received commissions on the gross sale, not the cash actually received by PLC. Supplemental Record on Appeal, vol. I, at 34–39. As for the overstatement of the stockholder's equity, appellants concede that it is a "matter of conjecture depending upon various accountants' opinion." Brief for Appellant at 36. In other words, there is conflicting evidence in the record. The district judge therefore made credibility choices in reaching his conclusions, and we are not at liberty to substitute our own judgment for his. Neither can we find the record so lacking in supporting evidence as to make his conclusions clearly erroneous. *See North River Energy Corp. v. United Mine Workers of America,* 664 F.2d 1184 (11th Cir.1981).

▇ Appellants contend that findings (2) and (5) are clearly erroneous because these facts are not material, and thus their omission does not violate Rule 10b–5. In reaching his decision to the contrary, the district judge properly recognized the test of materiality as whether a reasonable man would attach importance to the fact omitted in determining a course of action. *SEC v. Carriba Air, Inc.,* 681 F.2d 1318 (11th Cir.1982). The advisory jury also found these omitted facts to be material in light of the same standard. Appellants have failed to cite any sound reason for us to disturb these conclusions, other than the acts at issue in findings (2) and (5) are not per se illegal. While this may be true, we believe the relationship between a corporation, its officers, and other associated corporations, is an important consideration for a potential stockholder.

Findings (1), (3), and (8) are said to be clearly erroneous because these facts were actually disclosed. We find this argument to be meritless, as did the trial judge and the advisory jury. Appellants claim that the attorney who prepared the PLC prospectuses was told that they were receiving override commissions on the sale of PLC stock, but the attorney's testimony refutes this claim. Supplemental Record on Appeal, vol. IV, at 18. Tallant and Womack also argue that the prospectuses disclose the existence of installment-plan stock sales. While this is true, the prospectuses do not disclose that PLC often foreclosed on this stock, sold the same stock at foreclosure costs to PLC's wholly owned subsidiary, Aaron Beck, Inc., which in turn sold the stock again to the public. Likewise, the prospectuses do not fully and clearly disclose the fact that Tallant, Womack, and Erwin gained perpetual control of PLC through a nominal investment in PLC's class B common stock. The following pieces of information were included in each prospectus: class B stockholders controlled a majority of the board of directors; the officers and directors owned ninety percent of the outstanding class B stock for which they paid forty-five hundred dollars, but owned only 2.75 percent of the outstanding class A and class B stock combined; the charter and bylaws of PLC could be amended only upon the consent of a majority of class A stockholders and the consent of a majority of class B stockholders. These statements were separated by several pages in each prospectus. The ultimate conclusion, i.e., that appellants would always control PLC, was never disclosed even though this was precisely appellants' intent in organizing PLC. Supplemental Record on Appeal, vol. IV, at 20–23. The district judge found that any relevant disclosures with regard to control were so fragmented throughout the prospectuses that the average person would not understand their import. We agree. Full and fair disclosure cannot be achieved through piecemeal release of subsidiary facts which if stated together might provide a sufficient statement of the ultimate fact. See In the Matter of Universal Camera Corporation, 19 SEC 648 (1945), cited with approval in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 753, 95 S.Ct. 1917, 1933, 44 L.Ed.2d 539 (1975); Norte & Company v. Huffines, 304 F.Supp. 1096 (S.D.N.Y.1968).

In finding (6) the district court concluded that the final prospectus did not disclose a fictitious sale made under a previous offering. Appellants contend that this particular sale did not go into default until after the final prospectus was prepared and released, and thus it could not have been disclosed. We believe this argument misses the thrust of the district judge's finding. He concluded that PLC made a fictitious sale prior to preparation of the final prospectus. He did not find that the sale became fictitious only after the default of the supposed purchaser.

Appellants' remaining claim of error is that the record is void of any evidence establishing scienter on their part. Scienter is a necessary element of a Section 10(b) violation. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In this circuit, the necessary scienter can be established by a showing of knowing misconduct or severe recklessness. SEC v. Carriba Air, Inc., 681 F.2d 1318 (11th Cir.1982). The district judge below concluded that Tallant and Womack "were generally aware that PLC was not discharging all material facts to the plaintiff and other purchasers of PLC's class A common stock and they knowingly assisted PLC in connection with PLC's failure to disclose such material facts." The advisory jury reached the same conclusion. After a review of the entire record, we agree. Tallant and Womack were involved with PLC from its inception. They were aware and usually the cause of every act and omission which the district court later found to be fraudulent. Their acts and behavior throughout PLC's existence overwhelmingly support an inference of severe recklessness if not intentional and wilful misconduct.

Accordingly, the judgment of the district court is

AFFIRMED.