## In re AMERIFIRST SECURITIES LITIGATION.

### No. 89–2614–CIV.

United States District Court, S.D. Florida.

Aug. 8, 1991.

C. Oliver Burt, III, Greenfield & Chimicles, Haverford, Pa., Bruce E. Coolidge, Wilmer, Cutler & Pickering, Washington, D.C., Hugo L. Black, Kelley, Black, Black, Byrne, Carig & Beasley, Miami, Fla., Robert Frutkin, Berger & Montague, P.C., Philadelphia, Pa., Michael J. Kennedy, Winthrop, Stimson, Putnam & Roberts, Palm Beach, Fla., Michael J. Pucillo, Greenfield & Chimicles, West Palm Beach, Fla., Paul B. Steinberg, Steinberg & Slewett, P.A., Miami Beach, Fla., Steven J. Toll, Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, Washington, D.C., Thomas F. Clauss, Jr., Winthrop, Stimson, Putnam & Roberts, New York City, for plaintiffs.

Lawrence Kellogg, Tew & Garcia-Pedrosa, Miami, Fla., Lee S. Wasserman, New York City, Bruce W. Greer, Alice G. Hector, Greer Homer & Bonner, P.A., Miami, Fla., Thomas J. O'Connell, New York City, David C. Pollack, Stroock & Stroock & Lavan, Paul Huck, Proenza, White & Huck, P.A., for Ernst & Young. Aubrey Kendall, Mershon Sawyer Johnston Dunwoody &

Cole, Miami, Fla., Donald Beverly, Beverly & Freeman, West Palm Beach, Fla., for defendants.

## ORDER GRANTING CLASS CERTIFICATION

HOEVELER, District Judge.

THIS CAUSE COMES before the Court upon Plaintiffs' Motion for Class Certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiffs bring an action, pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.-10b–5, on behalf of themselves and all other persons who purchased or otherwise acquired AmeriFirst common stock between November 5, 1986 and December 26, 1989 (the "Class Period") on the NASDAQ/National Market System[1] against AmeriFirst Bank ("AmeriFirst"); certain of its former officers and directors; two officers of AmeriFirst Development Corporation ("ADCO"), a wholly-owned service corporation subsidiary of AmeriFirst; James C. Carr, a real estate developer who entered into various business arrangements with AmeriFirst and ADCO; and the accounting firms of Deloitte & Touche ("Deloitte") and Ernst & Young, the respective outside auditors of AmeriFirst and ADCO. In general, Plaintiffs allege that Defendants participated in a fraudulent scheme to artificially inflate the apparent market value of AmeriFirst in order to convert AmeriFirst from a mutual thrift institution to a publicly traded stock company and ultimately sell the bank to a third party at a substantial profit to themselves. To implement their plan, Plaintiffs assert that Defendants attempted to inflate the value of AmeriFirst's commercial real estate ("CRE") loan portfolio through establishing policies and procedures that disregarded prudent and lawful banking practices, including ignoring routinely-considered loan risks. Ulti-mately, these procedures and practices allegedly resulted in an increased number of nonperforming loans. In order to conceal the problems that developed with AmeriFirst's loan portfolio, Plaintiffs further complain that Defendants permitted AmeriFirst to make improper modifications, extentions or advancements on existing problem loans rather than foreclose on the loans or add them to AmeriFirst's loan loss reserves. Had Defendants revealed the true value of, and risks associated with, AmeriFirst's outstanding loans, Plaintiffs allege that the market value of the AmeriFirst common stock would have declined.

In addition to the improper conduct concerning AmeriFirst's loan policies and procedures, Plaintiffs contend that Defendants unlawfully utilized ADCO as an instrumentality to help effectuate and conceal their fraudulent scheme. As ADCO's financial statements were consolidated in the financial statements of AmeriFirst, Plaintiffs assert that Defendants were able to manipulate the appearance of ADCO's profitability in order to enhance that of AmeriFirst. They allegedly overstated ADCO's profits by manipulating the sales of ADCO real estate with the aid of Defendant Carr, who was available on short notice to purchase the property—often at the end of a fiscal year or quarter—and by utilizing erroneous accounting methods.

As for the claims against Deloitte and Ernst & Young, Plaintiffs contend that the accounting firms willfully or recklessly ignored clear warning signs that the management defendants were engaging in improper practices to artificially inflate the market value of AmeriFirst. By allegedly failing to act in accordance with proper auditing practices and by, therefore, issuing unqualified opinions on the financial statements of AmeriFirst and ADCO which misrepresented the true financial condition of the institutions, Plaintiffs assert that Deloitte and Ernst & Young contributed to the overall success of the fraud against AmeriFirst's investors.

---

**1.** Excluded from the class are defendants named in this action, members of their families, their heirs, successors, assigns, legal representatives, and any entity in which any defendant has a controlling interest.

## DISCUSSION

In order to maintain a suit as a class action, plaintiffs must show that the four prerequisites of Rule 23(a) have been met and that one of the provisions of Rule 23(b) applies. Fed.R.Civ.P. 23; *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 n. 2 (11th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988). Thus, representatives may sue on behalf of a class if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representatives are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). Further, because Plaintiffs here seek class certification under Rule 23(b)(3), the Court must find that (1) the questions of law or fact common to the members of the class predominate over those questions affecting individual members only, and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3); *Kirkpatrick*, 827 F.2d at 721 n. 2.

■ Those seeking to certify their suit as a class action under Rule 23 bear the burden of establishing the specific prerequisites. *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir.1984); *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981). In determining whether the named plaintiffs have met their burden, the court's inquiry is limited to whether the requirements of Rule 23 have been satisfied; therefore, the court shall not consider the merits of the plaintiffs' claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732, 748 (1974); *Kirkpatrick*, 827 F.2d at 722; *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir.1984). However, this principle should not be invoked so rigidly so as to artificially limit a trial court's examination of the factors necessary to make a reasoned determination of whether Rule 23 has been satisfied. *Love v. Turlington*, 733 F.2d at 1564. Accordingly, a court may look beyond the pleadings in determining whether a motion for class certification should be granted. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740, 752 (1982); *Kirkpatrick*, 827 F.2d at 722.

■ It is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions. *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). Moreover, "the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action." *Id.* (quoting *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)). *See also Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir.1983) (suit involving fraudulent scheme against a large number of individuals is particularly appropriate for class action treatment); *Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969) ("... a class action in a federal securities action may well be the appropriate means for expeditious litigation of issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf.").

## I. RULE 23(a) REQUIREMENTS

### A. *Numerosity*

■ For a class action to be appropriate, the proposed class must be so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). In order to satisfy this requirement, the plaintiffs generally must proffer some evidence or reasonable estimate of the number of members comprising the purported class. *Zeidman*, 651 F.2d at 1038. However, the numerosity requirement of Rule 23(a)(1) is generally assumed to have been met in class action suits, such as the one here, involving nationally traded securities. *See, e.g., id.* at 1039 (It is reasonable to assume that "*any* class composed of the sellers of a nationally traded security during a period

in which hundreds of thousands ... of shares of the security were traded must necessarily be 'so numerous that joinder of all members is impracticable.' ").

Here, although the exact number of class members is not known at this time, Plaintiffs estimate, relying on information from the Bank's stock transfer books, that there are at least 1,000 shareholders who purchased shares of AmeriFirst stock during the class period. Further, Defendants do not dispute that the class is sufficiently large to satisfy the numerosity requirement. Accordingly, the numerosity threshold of Rule 23(a) has been met. *See id.* (stating that classes with as few as thirty members have been certified by some courts).

### B. *Commonality*

■ Class certification is only appropriate where there are questions of law or fact common to all class members. Fed. R.Civ.P. 23(a)(2); *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). Establishing commonality, however, does not require complete identity of the plaintiffs' claims. *Id.* at 808–09; *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir.1978). Rather, the requirement is usually satisfied if all class members are in a "substantially identical factual situation" and the "questions of law raised by the plaintiff are applicable to each class member." *Weiss*, 745 F.2d at 809. Moreover, a court will normally find commonality where a question of law refers to standardized conduct by defendants towards members of the proposed class. *See, e.g., Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D.Ill.1988) (citing *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill.1984)); *Green*, 406 F.2d at 300. Individual differences concerning treatment or damages will not defeat a finding of commonality. *Patrykus*, 121 F.R.D. at 361.

■ Applying these principles, there is no question that there is commonality of facts and issues in this case. Plaintiffs' Rule 10b–5 claims allege that Defendants participated in a common fraudulent scheme to artificially inflate the price of AmeriFirst stock and mislead investors. As both the factual and legal issues necessary to prove these claims and establish the defendants' liability for the alleged misrepresentations and omissions are essentially identical as to each member of the purported class, the Court finds that the requisite commonality is present. *See, e.g., Green*, 406 F.2d at 300; *Patrykus*, 121 F.R.D. at 361.

### C. *Typicality*

■ In evaluating whether typicality exists, a court must determine whether the class representatives' claims have the same essential characteristics as the claims of other members of the class. Fed.R.Civ.P. 23(a)(3); *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985). Factual distinctions between the claims of the named plaintiffs and those of other class members will not necessarily defeat a finding of typicality. *Id.* Thus, a strong similarity of legal issues will suffice despite substantial factual differences. *Id.*

■ In arguing that the claims of the class representatives here are not typical of those of the class, Defendants contend that none of the five named plaintiffs relied on the integrity of the market in purchasing the AmeriFirst securities.[2] As Defendants will have peculiar defenses as to these plaintiffs, Defendants argue that they cannot adequately represent the plaintiff class. To begin with, the possibility that a unique defense exists against the claim of a representative does not necessarily foreclose class certification. *Id.* Moreover, while Defendants are correct in noting that the named plaintiffs may not be entitled to a presumption of reliance based on the fraud

2. Although Defendants make this argument under Rule 23(a)(4), which requires that each plaintiff "fairly and adequately protect the interest of the class," this Court finds it more appropriate to analyze it under Rule 23(a)(3). However, as noted by other courts, the typicality requirement of (a)(3) clearly overlaps with the requirement that the named plaintiffs adequately represent the class. *See Eisenberg*, 766 F.2d at 786; *Weiss*, 745 F.2d at 809 n. 36.

on the market theory should Defendants ultimately prove that "price played *no* part whatsoever in their decision making," this is a question of fact which cannot be resolved at this stage in the proceedings. *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D.Pa.1989). Thus, the law in this Circuit is that neither a representative's degree of investment experience and sophistication nor his degree of reliance will preclude satisfaction of the typicality requirement on a motion for class certification. *Kennedy*, 710 F.2d at 717. As long as Plaintiffs assert, as they do here, that Defendants committed the same wrongful acts in the same manner against all members of the class, they establish the necessary typicality. *Id. See also Patrykus*, 121 F.R.D. at 362 (typicality found where "the claims asserted on behalf of all potential class members arise from the same course of conduct and are based upon the same legal theories"). Accordingly, the Court finds the claims of the representatives typical of those of the class.

#### D. *Adequacy of Representation*

■ Adequate class representation is established upon demonstrating that the class representatives "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4); *Kirkpatrick*, 827 F.2d at 726. Here, the named plaintiffs assert that their interests are not antagonistic to those of the absent class members, and further, that their attorneys are experienced in securities litigation and qualified to conduct the proposed litigation. As Defendants do not dispute these assertions and as the Court finds no indication that the named plaintiffs are not adequate representatives, the Court concludes that they will protect the interests of the class in accordance with Rule 23(a)(4). *Kirkpatrick*, 827 F.2d at 726–28.

## II. RULE 23(b)(3) REQUIREMENTS

#### A. *Predominance of Common Issues*

Defendants argue that class certification is not appropriate in this case even if the four requirements of Rule 23(a) have been met, because individual questions of law and fact predominate over those questions common to the class. In support of their position, Defendants assert that individual issues of reliance peculiar to each class member and the broad definition of the class period and class composition render this class unmanageable and, thus, preclude a finding that Rule 23(b)(3) has been satisfied.[3] Each of these arguments will be considered in turn.

##### 1. Reliance

■ Proof of reliance is an essential element of a Rule 10b–5 action as it "establishes the causal link between the defendant's activities and the plaintiff's injuries and prevents federal securities law from affording unlimited liability." *Ross v. Bank South, N.A.*, 885 F.2d 723, 728 (11th Cir.1989) (en banc), *cert. denied,* — U.S. —, 110 S.Ct. 1924, 109 L.Ed.2d 287 (1990). While recovery under the federal securities laws generally requires a showing of actual reliance on the alleged misrepresentation or omission, courts have recognized a presumption of reliance in certain circumstances. For example, where plaintiffs demonstrate that they relied upon the integrity of market in purchasing or selling securities in an open and developed market, they need not establish that they relied on specific misrepresentations. *Kirkpatrick*, 827 F.2d at 722. As explained by the Supreme Court in *Basic v. Levinson:*

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding

**3.** In determining whether common issues of law or fact predominate over those questions affecting only individual class members and whether a class action is superior to other available methods of adjudication, Rule 23(b)(3) provides that a court should consider the following:
 (A) the interest of members of the class in individually controlling the prosecution or de-

fense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations. 485 U.S. 224, 241–42, 108 S.Ct. 978, 988–89, 99 L.Ed.2d 194, 215 (1988) (quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–1161 (3d Cir. 1986)). *See also Lipton v. Documation, Inc.,* 734 F.2d 740, 747–48 (11th Cir.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985).[4] In order for the market theory to apply, however, it follows that a plaintiff must show that the market in which the stock traded was "efficient." *Freeman v. Laventhol & Horwath,* 915 F.2d 193, 197–98 (6th Cir.1990); *Greenberg v. Boettcher & Co.,* 755 F.Supp. 776, 781 (N.D.Ill.1991); *Cammer v. Bloom,* 711 F.Supp. 1264, 1285 & n. 34 (D.N.J.1989). An efficient market has been defined as one that obtains material information about a company and rapidly reflects that new information in the price of the stock. *Hurley v. Federal Deposit Ins. Corp.,* 719 F.Supp. 27, 34 (D.Mass.1989). Courts have suggested that the following factors may indicate an efficiently traded security: (1) a large weekly trading volume, (2) a significant number of securities analysts followed and reported on the company's stock during the applicable period, (3) the stock had numerous market makers and arbitrageurs, (4) the company was entitled to file an S–3 Registration Statement in connection with public offerings or, if ineligible, the ineligibility was the result of timing factors and not because the minimum stock requirements set forth in the Form S–3 instructions were not met, and (5) an historical showing of immediate price response to unexpected corporate events or financial releases. *See, e.g., Cammer,* 711 F.Supp. at 1285–87; *Freeman,* 915 F.2d at 199; *Hurley,* 719 F.Supp. at 34.

■■■ Defendants in the instant case argue that there is no evidence that the AmeriFirst securities traded in an efficient market and, therefore, that a presumption of reliance is not available here. In support of their position, Defendants first assert that an over-the-counter ("OTC") market, such as the one in which AmeriFirst securities traded, is per se inefficient. Contrary to Defendants contention, however, this Court notes that the majority of courts considering the issue have held that the fact that securities traded on an OTC market, rather than on a national stock exchange, will not necessarily defeat a finding of market efficiency provided there is evidence that the stock at issue traded in an environment where material information concerning the company is widely available and accurately reflected in the price of the stock. *See, e.g., Cammer,* 711 F.Supp. at 1281–82; *Finkel v. Docutel/Olivetti Corp.,* 817 F.2d 356, 364 & n. 25 (5th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988); *Hurley,* 719 F.Supp. at 33–34; *Harman v. LyphoMed, Inc.,* 122 F.R.D. 522, 525 (N.D.Ill.1988). As stated by the court in *Cammer:*

It is not logical to draw bright line tests—such as whether a company is listed on a national exchange or is entitled to register securities on SEC Form S–3—to assist fact-finders in determining whether a stock trades in an "open and efficient market." A well established and widely followed company may choose for any number of unrelated reasons not to list itself on a national exchange. Furthermore, there may be a company whose stock trades in an efficient market, but which just missed or

---

**4.** Plaintiffs also claim that the Court should presume they relied on the alleged material omissions of Defendants based on the Supreme Court's analysis in *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741, 761 (1972). The Court finds the *Affiliated Ute* presumption of reliance inapposite to this case, however, as Defendants are charged both with material misrepresenta-

tions and omissions. In such a "mixed case," the presumption simply does not attach. *Huddleston v. Herman & MacLean,* 640 F.2d 534, 548 (5th Cir.1981), *aff'd in part, rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Kirkpatrick,* 827 F.2d at 722; *Cavalier Carpets, Inc. v. Caylor,* 746 F.2d 749, 756–57 (11th Cir.1984).

recently failed to meet the qualifications for Form S-3 registrants.

*Cammer,* 711 F.Supp. at 1287. *But see Epstein v. American Reserve Corp.,* 1988 WL 40500, 1988 U.S. Dist. LEXIS 3382 (N.D.Ill. Apr. 21, 1988); *Lubin v. Sybedon Corp.,* 688 F.Supp. 1425 (S.D.Cal.1988). As this Court endorses the view that an OTC market may indeed be "efficient" for purposes of invoking the fraud on the market theory, the Court now considers whether the NASDAQ/National Market System on which the AmeriFirst stock traded processed information concerning the securities in a rapid and accurate manner.

Plaintiffs point to several indications that the market for the AmeriFirst stock was well-developed and efficient. They submit that during the class period, more than 94 million shares were traded, with an average weekly volume of approximately 575,-000 shares, and that AmeriFirst's average turnover of stock was a high 5.2%.[5] In addition, they offer evidence that six securities analysts issued reports on the stock during the class period and that the stock had over twenty market makers who reacted swiftly to AmeriFirst's reported financial results. Moreover, responding to Defendants' statement that AmeriFirst was unable to use the S-3 Registration Form during much of the class period, Plaintiffs counter that a company's ineligibility for Form S-3 registration is not dispositive when it is due, as here, to timing factors. *Citing Cammer,* 711 F.Supp. at 1285; *The Fraud-On-The-Market Theory:*

*A Contrarian View,* 38 Emory L.J. at 1317 n. 230 (1989). Finally, Plaintiffs submit evidence that AmeriFirst's stock price did indeed react swiftly to public information. For example, they state that on the same day that AmeriFirst filed its 1987 Annual Report reflecting a positive assessment of the company's financial well-being, AmeriFirst's stock closed at $1.25 per share higher than on the previous day. Similarly, they assert, the day following an announcement concerning AmeriFirst's poor earnings results, the price of the stock plunged $⅜.

These facts and figures suggest that, at least as of a certain point in time, the AmeriFirst securities traded in a well-developed and efficient market. Thus, questions concerning individual reliance by Plaintiffs who purchased during this period do not predominate over those questions common to the purported class.[6] It is important to note, however, that the class period begins on November 5, 1986—the date of AmeriFirst's initial public offering. From the date of the offering until sometime thereafter, the market was, by definition, of a primary nature and therefore did not reflect information in a quick and accurate manner. Accordingly, Plaintiffs purchasing during this time span may not rely on a presumption of reliance under the fraud on the market theory set forth in *Basic.* This Circuit recognizes, however, that individuals purchasing securities in a primary, undeveloped market may nevertheless be entitled to a presumption of re-

---

**5.** This average turnover figure is calculated by dividing the average weekly trading volume of approximately 575,000 shares by the 11 million outstanding shares.

**6.** Defendants correctly point out that, even where a market for a particular security is efficient, the fraud on the market theory will not apply where it is shown that the plaintiffs relied exclusively upon factors other than the integrity of the market in purchasing or selling the securities. *Basic,* 485 U.S. at 248–49, 108 S.Ct. at 992, 99 L.Ed.2d at 219; *Kirkpatrick,* 827 F.2d at 723; *Panzirer v. Wolf,* 663 F.2d 365, 367 (2d Cir.1981), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982). In urging the Court to reject the fraud on the market theory in this case, Defendants argue that they have presented evidence that the trading and price of

the stock were governed by rumors and reports of the potential takeover of AmeriFirst by other institutions and not by the integrity of the OTC market. They point to a number of newspaper articles, wire service reports and announcements by AmeriFirst and other banking institutions concerning a possible takeover of the bank and conclude that it was these publications which in fact drove the trading and price of the stock. The Court does not find, however, that the evidence conclusively establishes that Plaintiffs purchased solely on speculation of an imminent takeover. Moreover, to conclude that Plaintiffs did not rely on the integrity of the market would require the Court to delve into the merits of the case—a task which is simply inappropriate at this stage in the proceedings. *See, e.g., Moskowitz,* 128 F.R.D. at 631.

liance if they prove that the securities could not have been marketed at any price absent the fraud. *Ross,* 885 F.2d at 729; *Kirkpatrick,* 827 F.2d at 722; *Shores v. Sklar,* 647 F.2d 462, 470–71 (5th Cir.1981) (en banc), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). Under the "fraud created the market" theory, investors are not presumed to rely on the integrity of the market price; rather they are presumed to rely on the integrity of the market itself and on the fact that the particular securities are genuine. *Ross,* 885 F.2d at 729; *Shores,* 647 F.2d at 470–71. Therefore, "[i]f [a plaintiff] proves no more than that the bonds would have been offered at a lower price or a higher rate, rather than that they would never have been issued or marketed, he cannot recover." *Shores,* 647 F.2d at 470.

Nowhere do Plaintiffs in their complaint allege that the AmeriFirst securities could not have been marketed "but for" the alleged fraud of the defendants. Thus, those plaintiffs purchasing stock before there was a well-developed and efficient market for the AmeriFirst securities will have to establish reliance on specific misrepresentations made by the defendants.[7] Given the numerous common factual and legal issues presented by Plaintiffs' Rule 10b–5 claims, however, the Court determines that the mere existence of individual questions of reliance is not a barrier to class certification. *See, e.g., Kirkpatrick,* 827 F.2d at 724–25; *Eisenberg,* 766 F.2d at 776; *Green,* 406 F.2d at 300. "Rule 23 does not require that all the questions of law and fact raised by the dispute be common." *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1557 (11th Cir.), *cert. denied,* 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). However, should the Court determine at a later point in the proceedings that the two groups of Plaintiffs—those who are entitled to a presumption of reliance and those who are not—should be divided into subclasses or tried separately, as each will bear substantially different burdens of proof at the time of trial, the

Court will take the appropriate action at that time.

### 2. Class Period

Defendants further argue that common issues do not predominate over individual ones because the thirty-eight month class period designated by Plaintiffs involves several allegedly misleading disclosure documents, requiring individualized proof concerning reliance, materiality and scienter. Where there are material variances in proof necessary to maintain a claim for securities fraud during a class period due to a frequently fluctuating and developing factual scenario, Defendants correctly point out that class certification may indeed be inappropriate. *Katz v. Comdisco, Inc.,* 117 F.R.D. 403, 412 (N.D.Ill.1987). For instance, in *Zandman v. Joseph,* 102 F.R.D. 924 (N.D.Ind.1984), the district court refused to certify a class brought on behalf of those who purchased Sulliar Corporation stock over a 27–month period, finding that the 57 allegedly misleading public statements made by Sulliar concerning its progress in the design, development, testing and marketability of a downhole steam generator [DSG] "differed to a marked degree as the development of the DSG progressed." *Id.* at 929. The court explained that the cause of action of an individual purchasing stock relying on a press release disseminated at the beginning of the class period would be "substantially different in terms of its falsity, materiality and scienter" than the cause of action possessed by an investor relying on a significantly later document. *See also J.H. Cohn & Co. v. American Appraisal Assoc., Inc.,* 628 F.2d 994, 998 (7th Cir.1980); *Issen v. GSC Enterprises, Inc.,* 508 F.Supp. 1298, 1301 (N.D.Ill.1981); *Gelman v. Westinghouse Elec. Corp.,* 73 F.R.D. 60, 67–68 (W.D.Pa.1976), *aff'd by an equally divided court,* 612 F.2d 799 (3d Cir.1977). Where, on the other hand, the plaintiffs allege a common misrepresentation or nondisclosure manifested over a period of time in several documents or several fraudulent

---

7. Should they wish, Plaintiffs may amend their complaint, if appropriate to do so, to allege that the securities could not have been marketed at

any price, thus invoking the fraud on the market theory under *Shores.*

activities all related to a single scheme to defraud, the requisite commonality for certification exists. In *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976), for example, the court found class treatment appropriate where the complaint alleged that the defendants engaged in a common scheme of fraudulent conduct involving the issuance of 45 separate documents over a 27–month period, all relating to certain alleged inadequacies in the company's financial reporting. The court explained:

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Id.* at 902 (citations omitted). *See also Kirkpatrick,* 827 F.2d at 724–25; *Green,* 406 F.2d at 300; *Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 368 (E.D.Pa. 1980).

■ Here, Plaintiffs assert that Defendants engaged in a common course of conduct to obtain substantial financial benefits for themselves by fraudulently overstating AmeriFirst's market value. They allegedly effectuated this fraud first by implementing policies and practices in contravention of prudent and lawful procedures to enable them to build up AmeriFirst's loan portfolio, and then by taking further steps to conceal the problems which developed with the bank's loans as a result of the wrongful policies and procedures. Although the facts of this case as set forth by the complaint inevitably developed to a certain extent over the course of the class period as the alleged fraud progressed, there is no indication of any major fluctuation of events which would make the materiality of a particular misstatement or the defendants' intent to defraud in any particular misstatement so different from other misrepresentations that proof of the claims would become unmanageable. Thus, the Court finds that the 38–month time period set forth by the motion for class certification appropriate to the facts of this case.

In light of the recent Supreme Court case, *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), however, the Court finds it necessary to shorten the proposed class period by seventeen days. In *Lampf,* the Court adopted a uniform federal statute of limitations for claims brought pursuant to § 10(b) and Rule 10b–5, holding that such claims must be commenced within one year of discovering the facts constituting the alleged violation and no later than three years after the violation itself. The Court, without detailed explanation, applied the 1–and–3–year structure retroactively to the case before it. *Id.* at ——, 111 S.Ct. at 2781. As the Supreme Court has declared that "[o]nce retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application," *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, ——, 111 S.Ct. 2439, 2447–48, 115 L.Ed.2d 481 (1991), this Court must employ the limitations period as established by *Lampf* to the case at bar.

■ It appears from the allegations of the amended complaint and memoranda submitted by the plaintiffs that the alleged misrepresentations and omissions were not discovered until some time after February of 1989. As the original complaint in this action was filed on November 22, 1989, it clearly was commenced within one year after discovery of the facts constituting the alleged Rule 10b–5 violation. As for the filing limitation imposed by the three-year repose period, however, the Court determines that those persons who purchased AmeriFirst securities prior to November 22, 1986 may not properly be included in the class, as the violations which form the basis of their claims occurred more than three years prior to the filing of the original complaint thus rendering their securities claims time-barred. Under § 10(b), a person commits a securities "violation" when he makes a false or misleading state-

ment "in connection with the purchase or sale of a security." 15 U.S.C. § 78j. Accordingly, contrary to Defendants' suggestion, there must be a purchase or sale of the security in question, and not merely a misrepresentation or omission, in order for there to be a "violation" of the statute. *See Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1392–93 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991); *Farley v. Baird, Patrick & Co.*, 750 F.Supp. 1209, 1212–1214 (S.D.N.Y.1990); *Halperin v. Jasper*, 723 F.Supp. 1091, 1093, 1096 (E.D.Pa.1989). *Cf. Wigand v. Flo–Tek, Inc.*, 609 F.2d 1028, 1033 n. 5 (2d Cir.1979). The class, therefore, shall consist of all investors purchasing between November 22, 1986—three years prior to the date the original complaint was filed—and December 26, 1989.

### 3. Class Definition

■ In addition to attacking the broadness of the class period, Defendants also challenge the class's composition, contending that it improperly includes takeover participants and speculators, insiders and tippees, members of AmeriFirst's new management, and those who have suffered no loss as a result of the alleged misstatements and omissions. The Court finds these arguments unpersuasive.

Defendants assert that the proposed class should not include speculators, arbitrageurs and professional investors, as there will be a question as to their investment motives and whether each in fact relied on the integrity of the market price in purchasing the AmeriFirst stock or whether they invested based upon their analysis concerning the possibility of a potential takeover. As recognized by the court in *Moskowitz*, 128 F.R.D. at 631, however, a presumption of reliance may apply despite the fact that particular investors are engaging in takeover speculation. *See also* H.R.Rep. No. 1383, 73d Cong., 2d Sess. 11 (1934) (indicating that Congress recognized that speculators may rely on the integrity of the market and intended for them to be afforded protection by the 1934 Act). "Exactly what plaintiff relied on in purchasing and selling his shares [of

AmeriFirst stock] is a question of fact which can not [sic] be resolved at the class action stage." *Moskowitz*, 128 F.R.D. at 631. Similarly, as to the inclusion of sophisticated investors in the class, this Circuit has recognized that "the degree of investment experience or sophistication ... is irrelevant." *Kennedy*, 710 F.2d at 717. *See also Ballan v. Wilfred American Educational Corp.*, [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) p. 95,669 at 98,-135, 1990 WL 203111 (E.D.N.Y. Nov. 20, 1990); *McFarland v. Memorex Corp.*, 96 F.R.D. 357, 363 (N.D.Cal.1982).

As for Defendants' complaint that the class improperly includes insiders and tippees, the Court finds Defendants' argument entirely speculative and unsupported by any evidence. In a similar vein, Defendants' assertion that certain members of AmeriFirst's new management who are included in the class had access to inside information and were the ones actually responsible for the dissemination of the allegedly misleading information to the class is the product of conjecture and inappropriately raised at this time. Should evidence develop at a later point in the discovery process indicating that these officers and directors indeed have interests adverse to the other class members, the Court will take the appropriate steps to establish a separate subclass or exclude them from the class altogether.

Finally, Defendants' argument that the class composition improperly incorporates investors who may have sold their AmeriFirst securities at a profit is equally without merit.

Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions.

*In re Alexander Grant & Co. Litigation,* 110 F.R.D. 528, 534 (S.D.Fla.1986) (quoting *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89, 93 (S.D.N.Y.1981)). Consequently, courts routinely hold that the presence of individual questions concerning damages is not a basis for denying

class certification. *See, e.g., Bresson v. Thomson McKinnon Securities,* 118 F.R.D. 339, 343 (S.D.N.Y.1988); *Alexander,* 110 F.R.D. at 534; *In re LILCO Securities Litig.,* 111 F.R.D. 663, 669 (E.D.N.Y.1986); *Irving Trust Co. v. Nationwide Leisure Corp.,* 95 F.R.D. 51, 58 (S.D.N.Y.1982).

### B. *Superiority*

 Finally, as required under Rule 23(b)(3), the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Fed.R.Civ.P. 23(b)(3); *Eisen,* 417 U.S. at 164, 94 S.Ct. at 2146, 40 L.Ed. 2d. at 741. Where class members possess no strong interest in individually controlling the prosecution or defense of separate actions or where the class members "are in a poor position to seek legal redress, either because they do not know enough or because such redress is disproportionately expensive" a class action is particularly appropriate. *Dolgow v. Anderson,* 43 F.R.D. 472, 485 (E.D.N.Y.1968) (citation omitted). *See also Kirkpatrick,* 827 F.2d at 721 n. 2. Individual interests may be minimal where, as here, the amounts at stake for each class member are so small that separate suits would be impractical. *Dolgow,* 43 F.R.D. at 485. In addition, some courts have suggested that the relevant question in deciding the superiority of a class action is the number of persons injured by the alleged Rule 10b–5 violations. *See Green,* 406 F.2d at 301 (citing *Hohmann v. Packard Inst. Co.,* 399 F.2d 711 (7th Cir.1968)). In the instant case, it is estimated that there are at least 1,000 persons injured by the alleged wrongful acts of the defendants. Accordingly, this Court finds a class action to be the superior method of adjudicating this particular controversy.

### CONCLUSION

For the aforementioned reasons, the Court concludes that a class action is the appropriate vehicle for adjudicating the claims set forth in this suit. In light of the above, it is hereby ORDERED and ADJUDGED that the motion for class certification is GRANTED. The class shall consist of all persons who purchased Ameri-First common stock from November 22, 1986 up to and including December 26, 1989, with the exception of those individuals named as defendants in this action, their families, heirs, successors, assigns, legal representatives and any entity in which they have a controlling interest.

DONE and ORDERED.