LIFESTAR AMBULANCE SERVICE, INC., individually and on behalf of a class of all entities similarly situated; Coastal Medical Transport, Inc., individually and on behalf of a class of all entities similarly situated; Ambulance Services, Inc., individually and on behalf of a class of all entities similarly situated, Plaintiffs,

v.

UNITED STATES of America; the Department of Health and Human Services; Tommy Thompson in his official capacity as Secretary/Director of DHHS; the Health Care Financing Administration (Centers for Medicare & Medicaid Services); and Thomas A. Scully in his official capacity as Secretary/Director of HCFA/CMS, Defendants.

No. 4:02–CV–127–1(CDL).

United States District Court,
M.D. Georgia,
Columbus Division.

Jan. 16, 2003.

Marlan B. Wilbanks, G. Christopher Kelly, Atlanta, GA, James E. Butler, Jr., James Clay Fuller, Dustin T. Brown, Columbus, GA, Jason Lance Crawford, Columbus, GA, Jonathan H. Waller, Birmingham, AL, for plaintiffs.

Daniel Bensing, Sheila Lieber, Federal Programs Branch, Washington, DC, Brendan F. Flanagan, Columbus, GA, for defendants.

## ORDER

LAND, District Judge.

The Court presently has pending before it Defendants' Motion to Dismiss, Defendants' Motion for Summary Judgment, Plaintiffs' Motion for Summary Judgment, and Plaintiffs' Motion for Class Certification. These motions have been fully briefed and argued by the parties. The Court finds that it has subject matter jurisdiction of this case and that Plaintiffs are entitled to a writ of mandamus as a matter of law. Accordingly, Defendants' Motion to Dismiss and Motion for Summary Judgment are denied, and Plaintiffs' Motion for Summary Judgment is granted in part.[1] The Court also finds that a Rule 23(b)(2) class should be certified, and therefore, Plaintiffs' Motion for Class Certification is granted.

## I. FACTUAL BACKGROUND

This case arises from a dispute over the Medicare reimbursement rates for ambulance service suppliers. The named Plaintiffs, three ambulance suppliers based in Georgia, North Carolina, and Tennessee who provide ambulance services to Medicare recipients, bring this putative class action against the Department of Health and Human Services ("DHHS"), the Centers for Medicare and Medicaid Services (formerly the Health Care Financing Administration), and individuals associated with those entities. Plaintiffs' Complaint focuses upon Defendants' alleged failure to comply with congres-

---

1. Plaintiff's Motion for Summary Judgment, as originally filed, requested the Court to find that they were entitled to payment under a lawful fee schedule—in other words, Plaintiffs sought damages and not merely injunctive relief. At this time, Plaintiffs do not assert a claim for damages but only seek declaratory and mandamus relief.

sional mandates establishing the effective dates for certain fee schedules.

Plaintiffs contend that DHHS ignored the clear direction of Congress, as expressed in the Balanced Budget Act of 1997 ("BBA"), by failing to adopt a fee schedule applying to ambulance services furnished from January 1, 2000, through March 31, 2002. Plaintiffs also maintain that DHHS has failed to properly implement certain mileage fee schedules applicable to services provided from July 1, 2001, through March 31, 2002, as required by the Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000 ("BIPA"). Plaintiffs seek injunctive relief ordering DHHS to adopt a fee schedule covering ambulance services supplied to Medicare recipients as described in the BBA and a fee schedule for mileage as required by the BIPA during the time periods just described.

The Medicare Act, 42 U.S.C. § 1395 *et seq.*, creates a health insurance program for elderly and disabled individuals. The program is administered by the Centers for Medicare and Medicaid Services (formerly the Health Care Financing Administration), on behalf of the Secretary of DHHS, who is ultimately responsible for the program. Medicare Part A authorizes payments for covered inpatient hospital treatment and related services, including skilled nursing home care. Part B, which is applicable in this case, authorizes payment for covered items and services provided to individuals such as physicians' treatment, clinical laboratory tests, or durable medical equipment. Part B also covers and pays for ambulance services, including those provided by ambulance service suppliers like Plaintiffs. *See e.g.*, Supplementary Medical Insurance (SMI) Benefits, 42 C.F.R. § 410.10(i) (2001). Plaintiffs contend that Congress specified a time frame during which payments for services furnished to Medicare patients and for certain mileage should be paid in accordance with the fee schedule provisions of the BBA and BIPA. Plaintiffs further contend that DHHS failed to use the appropriate fee schedule in making payments during that period contrary to the expressed intention of Congress. To fully understand Plaintiffs' claims, a brief review of the evolution of the methodology for reimbursing ambulance suppliers under the Medicare Act is helpful.

### A. Methodology Prior to the Adoption of the BBA

Traditionally, Medicare paid for ambulance services furnished by suppliers on a "reasonable charge" basis. *See* Medicare Program; Fee Schedule for Payment of Ambulance Services and Revisions to the Physician Certification Requirements for Coverage of Nonemergency Ambulance Services, 65 Fed.Reg. 55,078, 55,078 (proposed Sept. 12, 2000) (to be codified at 42 C.F.R. pts. 410 & 414). A "reasonable charge" for ambulance services is determined by the lowest of the customary, prevailing, actual, or inflation indexed charges. *Id.* Under the "reasonable charge" methodology, different billing and payment methods were in use in different localities. Some methods provided separate charges for items such as individual services, mileage, and supplies. In contrast, one method provided a single, all-inclusive charge for all services, mileage, and supplies. *Id.*

### B. Fee Schedule Under BBA Effective January 1, 2000

In 1997, as part of the BBA, Congress mandated the establishment of a "national" ambulance fee schedule for ambulance services to be paid for under Medicare. Congress required that the fee schedule create more equitable payments for similar services performed in different locations and that it be designed to replace the previous "reasonable charge" methodology. In enacting the BBA, Congress explicitly provided that the fee schedule adopted by DHHS "*shall apply to services furnished on or after January 1, 2000.*" Pub.L. No. 105–33, § 4531(b)(2) & (3)(codified in part at 42 U.S.C. § 1395m(l)) (emphasis added).

Pursuant to the BBA, DHHS adopted a fee schedule on February 27, 2002, but applied it only to services furnished on or after April 1, 2002, over two years after the effective date mandated by Congress. *See generally* Medicare Program; Fee Schedule for Payment of Ambulance Services and Revisions to the Physician Certification Requirements for Coverage of Nonemergency Ambu-

lance Services, 67 Fed.Reg. 9,100, 9,100 (Feb. 27, 2002) (to be codified at 42 C.F.R. pts. 410 & 414). Plaintiffs contend that they, along with the other members of the putative class, are entitled to have a fee schedule implemented that applies to services furnished from January 1, 2000, to March 31, 2002, under the terms of the BBA.[2] Thus, they seek injunctive relief ordering Defendants to implement such a fee schedule.

### C. BIPA Change in Payment of In–County Miles

In addition to the changes in reimbursement fee schedules enacted as part of the BBA, Congress also addressed inequities inherent in compensating ambulance suppliers under the reasonable charge methodology by enacting the BIPA in 2000. Pub.L. No. 106–554, § 423(b)(2), 114 Stat. 2763 (codified in part at 42 U.S.C. § 1395m(1)(2)(E) (2000)). The BIPA provided, in relevant part, that certain ambulance suppliers that had previously not received mileage payments for miles traveled in their home county should begin receiving compensation for those miles. 42 U.S.C. § 1395m(1)(2)(E). Congress made this provision *applicable to services furnished on or after July 1, 2001.* Medicaid, Medicare and SCHIP Benefits Improvement and Protection Act of 2000 § 423(b)(2). These mileage reimbursement changes only applied to certain states, including Tennessee and North Carolina, the homes of two of the named Plaintiffs in this litigation—Ambulance Transport Services, Inc. and Coastal Medical Transport, Inc., respectively. Notwithstanding the clear congressional mandate that the mileage provisions of the BIPA be applied to services furnished on or after July 1, 2001, DHHS adopted a fee schedule and applied it only to services furnished on or after April 1, 2002. Therefore, Plaintiffs Ambulance Transport Services, Inc. of Ten-

nessee and Coastal Medical Transport, Inc. of North Carolina, along with others similarly situated, were not paid for mileage traveled in their home counties as required by the BIPA for the period July 1, 2001, through March 31, 2002. These Plaintiffs seek injunctive relief requiring that Defendants implement the BIPA mileage provisions to apply to services provided between July 1, 2001, and March 31, 2002, as required by the BIPA.

## II. DISCUSSION

### A. Defendants' Motion to Dismiss

■ Defendants preliminarily move to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction on the basis that Plaintiffs have failed to exhaust their administrative remedies under the Medicare Act.[3] It is undisputed that Plaintiffs have not availed themselves of any of the administrative remedies provided for under the Medicare Act. Plaintiffs contend that their claims do not "arise under" the Medicare Act but instead arise under the BBA and BIPA, and therefore, the Medicare Act's exhaustion of remedies requirement is not applicable. Plaintiffs alternatively argue that the Medicare Act's exhaustion of remedies requirement has no application to their claim for mandamus relief.

Pretermitting whether Plaintiffs' claims "arise under" the Medicare Act, the Court finds that given the unique circumstances of this case, Plaintiffs' claim for mandamus relief does not require them to exhaust administrative remedies provided for under the Medicare Act. *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). Unlike other

---

**2.** Plaintiffs, apparently recognizing that DHHS has some discretion in developing the fee schedule, do not seek an order requiring DHHS to apply retroactively the fee schedule it implemented for services supplied on or after April 1, 2002. Plaintiffs simply seek an order requiring Defendants to adopt a fee schedule covering the period January 1, 2000, through March 31, 2002, as mandated by the BBA. Presumably, if Defendants implemented a fee schedule that failed to comply

with the Court's order and/or the intent of Congress, Plaintiffs would seek further relief from the Court at the appropriate time.

**3.** Section 405(h) of the Medicare Act precludes federal court jurisdiction for claims "arising under the Act," until the aggrieved party has exhausted its administrative remedies. 42 U.S.C. § 405(h).

forms of subject matter jurisdiction, mandamus relief under § 1361 is not explicitly excluded from judicial review by § 405(h) of the Medicare Act. Consequently, Plaintiffs' failure to exhaust administrative remedies under the Medicare Act does not deprive the Court of subject matter jurisdiction over Plaintiffs' mandamus claims.[4] Accordingly, Defendants' Motion to Dismiss based upon lack of subject matter jurisdiction is denied.[5]

### B. The Parties' Motions for Summary Judgment

The parties agree that the issues to be resolved in this case should be resolved as a matter of law because no genuine issues of material fact exist to be tried. Accordingly, summary judgment is the appropriate procedural vehicle for deciding this case. *See* Fed.R.Civ.P. 56(c). The issue presented is whether Plaintiffs or Defendants are entitled to judgment as a matter of law on Plaintiffs' mandamus claim. Mandamus is an extraordinary equitable remedy that requires a substantial showing by the plaintiff. As the Eleventh Circuit has stated, "Mandamus is an extraordinary remedy and will not lie if other remedies are available." *In re United States*, 985 F.2d 510, 511 (11th Cir.1993); *see also George Kabeller, Inc. v. Busey*, 999 F.2d 1417, 1423 (11th Cir.1993); *Dist. Lodge No. 166, Int'l Assoc. of Machinists and Aerospace Workers, AFL–CIO v. TWA Servs., Inc.*, 731 F.2d 711, 717 (11th Cir.1984). Mandamus relief is appropriate when (1) the defendant owes a clear nondiscretionary duty to the plaintiff and (2) the plaintiff has exhausted all other avenues of relief. *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).

### 1. Nondiscretionary Duty

■ The Court finds that the BBA unequivocally required DHHS to develop a new fee schedule applicable to services furnished on or after January 1, 2000. Balanced Budget Act of 1997, Pub.L. No. 105–33, § 4531(b)(2) & (3), 111 Stat. 451 (1997) (codified in part at 42 U.S.C. § 1395m(1)). The Court also finds that Congress plainly stated in the BIPA that changes in the payment of in-county mileage would apply to services furnished on or after July 1, 2001. Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000, Pub.L. No. 106–554, § 423(b)(2), 114 Stat. 2763 (codified in part at 42 U.S.C. § 1395m(1)(2)(E) (2000)). Congress left no room for DHHS to exercise its discretion to alter the effective dates of these statutory provisions. When an executive agency or department is charged with implementing a congressional enactment through the regulatory process and Congress' intent is clear, no room for interpretation exists. No excuses allow the agency to avoid compliance. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the Court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). In both the BBA and BIPA, the intent of Congress is clear: a fee schedule for ambulance services "*shall* apply to services furnished on or after January 1, 2000," and a fee schedule for in-county mileage "*shall* apply to services furnished on or after July 1, 2001." Balanced Budget Act of 1997, § 4531(b)(3); Medicare, Medicaid and

---

**4.** The Court acknowledges that the Eleventh Circuit has not yet addressed this issue. However, several other circuits have found mandamus jurisdiction appropriate in cases involving claims ostensibly governed by 42 U.S.C. § 405(h), noting that mandamus jurisdiction is not listed among the other forms of subject matter jurisdiction specifically precluded absent exhaustion of administrative remedies. *See Buchanan v. Apfel*, 249 F.3d 485, 491–92 (6th Cir.2001); *Cordoba v. Massanari*, 256 F.3d 1044, 1047 (10th Cir.2001); *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C.Cir.2001); *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 515 (4th Cir.1999); *Briggs v. Sullivan*, 886 F.2d 1132,

1142 (9th Cir.1989); *Burnett v. Bowen*, 830 F.2d 731, 736–38 (7th Cir.1987); *City of New York v. Heckler*, 742 F.2d 729, 739 (2d Cir.1984); *Ganem v. Heckler*, 746 F.2d 844, 850–52 (D.C.Cir.1984); *Belles v. Schweiker*, 720 F.2d 509, 512–13 (8th Cir.1983); *Colonial Penn Ins. Co. v. Heckler*, 721 F.2d 431, 437 n. 2 (3d Cir.1983); *Ellis v. Blum*, 643 F.2d 68, 82 (2d Cir.1981).

**5.** Insofar as Defendants seek to dismiss Plaintiffs' Complaint on non-jurisdictional grounds, Defendants' Motion to Dismiss is denied for the same reasons that Defendants' Motion for Summary Judgment is denied. *See infra* Part B.

SCHIP Benefits Improvement and Protection Act, § 423(b)(2). "[T]hat is the end of the matter." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778 [6]

Notwithstanding this clear nondiscretionary duty to follow the law and develop a fee schedule applicable to services provided subsequent to January 1, 2000, DHHS ignored the congressional mandate and promulgated a fee schedule to apply to services furnished on or after April 1, 2002. *See* Medicare Program; Fee Schedule for Payment of Ambulance Services and Revisions to the Physician Certification Requirements for Coverage of Nonemergency Ambulance Services, 67 Fed.Reg. at 9,100. DHHS likewise ignored Congress' mandate that the in-county mileage changes provided by the BIPA be applied for services furnished after July 1, 2001, and instead unilaterally made the fee schedule effective for services provided on or after April 1, 2002. *See id.*

DHHS simply does not have the authority to legislate an effective date different than that provided by Congress. The rule-making power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is the power to adopt regulations to carry into effect the will of Congress. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213–14, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Dixon v. United States*, 381 U.S. 68, 74, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936). Regulations must "be consistent with the statute under which they are promulgated." *United States v. Larionoff*, 431 U.S. 864, 873, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). An administrative regulation that fails to carry into effect the will of Congress, and instead operates to void or repeal the express terms of the statute, is a nullity. *Dixon*, 381 U.S. at 74, 85 S.Ct. 1301. Because the effective dates for the fee schedules promulgated by DHHS flatly contradict the expressed intent of Congress, DHHS has failed in its nondiscretionary duty to adopt a regulation that effectuates the will of Congress.[7]

### 2. Exhaustion of Other Avenues of Relief

■ Having found that Defendants violated a nondiscretionary duty, the Court must next evaluate whether Plaintiffs have exhausted all other avenues of relief. Defendants contend that Plaintiffs must submit their claims to DHHS and pursue any appeal administratively prior to invoking the mandamus jurisdiction of this Court. Although Defendants correctly point out that exhaustion of other available avenues of relief is a precondition for seeking mandamus relief, the question is not simply whether Plaintiffs have completed the administrative process. The question is whether "there is another means to obtain adequate review." *In re Bethesda Mem'l Hosp., Inc.*, 123 F.3d 1407, 1408 (11th Cir.1997). The Court must determine whether the administrative process to which the Government insists Plaintiffs and putative class members must resort is realistically available to Plaintiffs. When "bureaucratic red tape strangles a provider's right to judicial review, the Court may invoke its federal question jurisdiction and mandamus power." *Mem'l Hosp. v. Sullivan*, 779 F.Supp. 1410, 1412 (D.D.C.1991).

---

**6.** *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) ("[T]he mandatory 'shall,' ... normally creates an obligation impervious to judicial discretion.") (citing *Anderson v. Yungkau*, 329 U.S. 482, 483, 67 S.Ct. 428, 91 L.Ed. 436 (1947)).

**7.** The relevant language in both the BBA and BIPA is unambiguous and expresses the clear intent of Congress that the new fee schedules enacted pursuant to both Acts are to apply to services rendered after a date certain. *See*, Balanced Budget Act of 1997, Pub.L. No. 105–33, § 4531, 111 Stat. 451 (1997) (codified in part at § 42 U.S.C 1395m(1)) ("The amendments made by this subsection [providing for the promulgation of a new fee schedule for ambulance services] *shall apply* to services furnished on or after January 1, 2000.") (emphasis added); Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000, Pub.L. No. 106–554, § 423, 114 Stat. 2763 (codified in part at 42 U.S.C. § 1395m(1)(2)(E) (2000)) ("The amendment made [to the provisions for paying for certain ambulance mileage] *shall apply* to services furnished on or after July 1, 2001.") (emphasis added).

The Court finds that the relief sought by the Plaintiffs in this case could not be secured in the administrative process. Plaintiffs seek the implementation of fee schedules complying with the clear intent of Congress. Achieving this result will require either amending the current fee schedule so that it will apply to the time periods directed by Congress, or adopting a new fee schedule that applies to the relevant time frame and that complies with all the conditions set out by Congress in the BBA and BIPA. It is doubtful that an administrative law judge has the authority to order DHHS to rewrite its regulations to conform to the direction of Congress. Thus, Plaintiffs are seeking relief that could not be obtained administratively.

The Court also finds that even if an administrative law judge had the authority to grant the type relief requested by Plaintiffs in this case, such relief would not be available under the unique circumstances of this case. Every underlying claim potentially impacted by an order directing DHHS to adopt and apply a lawful fee schedule has already been submitted, considered, approved, and paid under the previous "reasonable charge" methodology. Requiring suppliers who suspected that they may have benefitted from a "national fee schedule" not yet adopted to file an administrative challenge to preserve their legal rights ignores reality.

Prior to February 27, 2002, suppliers like Plaintiffs were in what Defendants' counsel described at oral argument as a "twilight zone" regarding the availability of administrative relief. On one hand, Plaintiffs and the other putative class members were aware that the BBA and BIPA provided for fee schedules applying to services provided after January 1, 2000, and July 1, 2001, respectively. On the other hand, they had no fee schedule on which to base any claim that they might dispute before DHHS or an administrative law judge. It was not until February 27, 2002, that the Government revealed the content of the fee schedule and its intention to apply the new fee schedule only to services furnished on or after April 1, 2002. *See* 67 Fed.Reg. at 9,100.

Prior to February 27, 2002, it would have made no sense for members of the prospective class to do what the Government now says they should have done. The Government recognizes as much: "Until the final rule was in effect, the ambulance providers and suppliers and providers [*sic*] simply had no expectation of what the ambulance fee schedule would provide as payment ...." (Defs.' Mem. Opp'n Pls.' Mot. Summ. J. at 13). Nothing could have been achieved by filing an administrative claim challenging the amounts paid for every service rendered based on the argument that a fee schedule that did not exist would pay them more than the Government had paid. An administrative law judge would have been baffled by such a request. He or she would have had no idea what amount was due, *even if the administrative law judge could have* ruled that the supplier was correct about the legal issue upon which their arguments are based.

The Court also notes that the Government's conduct since adopting the regulation has reinforced the futility of requiring suppliers to resort to the administrative process. Specifically, DHHS, through a program memorandum, has directed its carriers not to accept resubmitted claims for services furnished prior to April 1, 2002. *See* DHHS Program Memorandum Intermediaries/Carriers, *at* http://www.cms.hhs.gov/manuals/pm_trans/AB02129.pdf (Sept. 27, 2002) ("Claims with a date of service prior to April 1, 2002, may not be resubmitted for processing under the new ambulance fee schedule guidelines."). By ordering the carriers not to accept claims from the relevant time frame for resubmission, DHHS has barred the door to the very process it claims that Plaintiffs should have invoked.

It has been recognized that an agency should not "relegate providers to a dead-end procedure under the Medicare statute, and then argue that the provider loses because the Medicare statute is the exclusive means of redress." *Mem'l Hosp.*, 779 F.Supp. at 1412 (citing *Beverly Hosp. v. Bowen*, 872 F.2d 483, 486–87 (D.C.Cir.1989)). Plaintiffs seek to compel Defendants to adopt and apply a legal fee schedule consistent with the mandate of Congress. The administrative process cannot grant this relief. Furthermore, Defendants have no discretion in the

performance of the duty to enact regulations consistent with the statute authorizing the regulations. Any entitlement to additional reimbursement amounts caused by the application of a fee schedule to services furnished in the relevant time frame would flow directly from an order compelling Defendants to follow the law.

The Court refuses to penalize Plaintiffs for failing to invoke an administrative process that (1) is forever incapable of providing the relief they seek, (2) was effectively unavailable to Plaintiffs prior to the announcement of the fee schedule, and (3) is now unavailable to Plaintiffs because of the actions of Defendants in ordering carriers not to accept resubmitted claims for services furnished in the relevant time frame. Accordingly, the Court finds that Plaintiffs have exhausted all other avenues of available relief for purposes of invoking the Court's mandamus jurisdiction.

### 3. Defendants' Excuses for Failing to Follow the Law

With the audacity of someone possessing the mistaken belief that they occupy a position of unchecked power, Defendants implicitly argue that they are above the law. Essentially, Defendants complain that their own failure to follow the law regarding the fee schedule implementation dates will cause them future difficulties if they are forced at this time to follow the law. The Court rejects Defendants' excuses for the reasons set forth below.

#### a. "Budget Neutrality"

■ Defendants first seek to be rescued by the so-called "budget neutrality" provision of the BBA. That provision states in relevant part:

In establishing such fee schedule, the Secretary shall

(A) ensure that the aggregate amount of payments made for ambulance services under this part during 2000 [2001, 2002] does

not exceed the aggregate amount of payments which would have been made for such services [under the reasonable charge methodology adjusted for inflation].

42 U.S.C. § 1395m(1)(3).

Defendants contend that if they are now required to implement a fee schedule retroactively to cover services previously provided and paid for under the "reasonable charge" methodology, they will be unable to do so in a "budget neutral" manner without seeking recoupment from suppliers who were paid more under the "reasonable charge" methodology than they would have been paid had Defendants implemented the new fee schedules as required by Congress.

The Court recognizes that Defendants, due to their own actions, may be required to make payments in excess of what Congress contemplated in order to follow the express provisions in the law regarding the implementation dates of the new fee schedules. However, to apply the "budget neutrality" provision to the exclusion of the clear mandate regarding the effective dates for the fee schedules would likewise produce a result not contemplated by Congress. Therefore, the Court finds as a matter of public policy and equity that any unexpected consequences (and burdens) caused by Defendants' failure to follow the law should be borne by those who created the lamentable situation and not by innocent intended beneficiaries of the law.[8]

#### b. Judicial Review

■ DHHS next contends that the BBA's jurisdictional provision precludes judicial review of the Secretary's refusal to apply a fee schedule to services on or after January 1, 2000. The Court rejects this contention. Although the statute expressly precludes review of fee schedule amounts and their phase-in, it does not preclude review of the one aspect of the BBA at issue in this case— the nondiscretionary effective date of Janu-

---

**8.** Though the contexts are different, the familiar policy developed through the common law that the wrongdoer should not benefit from his own wrong seems especially apropos to the case at bar. See, e.g., Bigelow v. RKO Radio Pictures,

327 U.S. 251, 265, 66 S.Ct. 574, 90 L.Ed. 652 (1946) ("The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.").

ary 1, 2000.[9] The statute provides in relevant part:

> There shall be no administrative or judicial review under section 1869 or otherwise *of the amounts established under the fee schedule* for ambulance services under this subsection, including matters described in paragraph (2) [phase-in provisions].

42 U.S.C. § 1395m(1)(5) (emphasis supplied). The Court need not review any "amounts established under the fee schedule" to determine whether Plaintiffs are entitled to the relief they seek. Moreover, the Court's decision in this case is based upon Congress' mandate that certain services provided during a certain time frame shall be paid based upon a new fee schedule. It is unnecessary to review the "phase-in" provisions to reach this conclusion.

The Court recognizes that the statute provides that in establishing the fee schedule, "the Secretary shall … (E) phase in the application of the payment rates under the fee schedule in a fair and efficient manner." 42 U.S.C. § 1395m(1)(2)(E). The Secretary's discretion in phasing in application of payment rates, however, cannot eliminate the requirement that there be some payment rates to "phase in" for services furnished on or after January 1, 2000, and for mileage incurred on or after July 1, 2001. The Court finds the BBA's grant of discretion to the Secretary in phasing in the fee schedule is not equivalent to a grant of freedom to legislate a new effective date. As it stands, no fee schedule exists for services furnished from January 1, 2000, through March 31, 2002, as required by the BBA or for qualifying mileage from July 1, 2001, through March 31, 2002, as required by the BIPA. Consequently, there is nothing to "phase in"

during that period. Based on the foregoing, the Court rejects Defendants' contention that the Court does not have the authority to require Defendants to comply with the law and implement fee schedules with the effective dates established by Congress.

### c. Defendants' Discretion

The Court also rejects Defendants' contention that Congress gave the Secretary of DHHS discretion to adopt a fee schedule that would "begin as soon after January 1, 2000 as feasible." (*See* Defs.' Mem. Opp'n Pls.' Mot. Summ. J. at 19). The language of the BBA and the BIPA indicate that Congress did not give that discretion to the Secretary. Although Congress could have easily used such discretionary language, it chose not to do so. Congress instead opted to impose a clear mandate that the fee schedules enacted pursuant to the two Acts apply to services rendered on or after the effective dates set forth therein.

Although the BBA is silent on when the regulation must be promulgated, its message is clear in connection with the services to which a fee schedule must be applied. Balanced Budget Act of 1997, § 4531 ("shall apply to services furnished on or after January 1, 2000"). Similarly, the BIPA is silent on when regulations must be promulgated, but it also plainly specifies the services to which its changes must be applied. Medicaid, Medicare and SCHIP Benefits Improvement and Protection Act of 2000, § 423(b)(2) ("shall apply to services furnished on or after July 1, 2001"). The Secretary's position that the fee schedule was to "begin as soon after January 1, 2000 as feasible" ignores the clear language chosen by Congress.[10] This Court

---

**9.** In considering the limitation of review, Congress chose to limit review of the amounts set by the fee schedule and other discretionary considerations, including the phase-in of payment rates, while leaving open review of other issues. 42 U.S.C. §§ 1395m(1)(2), (5). Congress could have easily precluded all review, but, by not doing so, Congress effectively expressed its intent to allow review of other issues, such as the one presently before the Court. *See Ganem v. Heckler,* 746 F.2d 844, 853 (D.C.Cir.1984) (fact Congress knows how to withdraw a remedy and has not expressly done so is some indication of congressional intent to preserve that remedy). The

BIPA, which governs the application of the fee schedule to claims for in-county mileage, contains no jurisdictional limitation, making the Court's review of that Act's effective date provision equally proper.

**10.** In contrast to the clear statutory language at issue in this case, the cases relied upon by the government feature statutory language that is truly ambiguous and subject to interpretation. *See Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 409–10, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) ("adjustments where, for a provider of services for any fiscal period, the aggregate reim-

refuses to rewrite the law, a job better suited for the legislative branch than the judiciary.

#### d. Burdens, Ratification, and Reliance

■ Finally, the Court rejects Defendants' contentions that they should be allowed to ignore the law because (1) of the alleged burden of compliance, (2) Congress has not stepped in and remedied the noncompliance, and (3) ambulance suppliers allegedly have not detrimentally relied upon the belief that the agency would follow the law. Any additional burdens facing Defendants are creatures of their own making. They should not be allowed to ignore the law because their failure to follow it previously will create a burden if they are required to follow it presently.[11] Furthermore, the Court finds no evidence that Congress has ratified Defendants' failure to comply with the law. The Court likewise finds no evidence or legal authority to support Defendants' contention that its failure to follow the law should be excused because Plaintiffs have not detrimentally relied upon Defendants' obligation to follow the law.

#### 4. Conclusion

As set forth hereinabove, the Court finds that Defendants had a nondiscretionary duty under the BBA to implement a fee schedule for payment of services furnished by ambulance service suppliers after January 1, 2000, and that Defendants breached this duty by failing to implement a fee schedule for services furnished from January 1, 2000, through March 31, 2002. The Court also finds that Defendants had a nondiscretionary duty under the BIPA to implement a system for the payment of in-county mileage in certain states, including North Carolina and Tennessee, starting on July 1, 2001. The Court further finds that Defendants breached this duty by failing to implement such a payment system for qualifying mileage during the period July 1, 2001, through March 31, 2002. Finally, the Court finds that Plaintiffs had no other available avenues for relief, and that mandamus is therefore appropriate in this case. Accordingly, Plaintiffs' Motion for Summary Judgment is granted and Defendants' Motion for Summary Judgment is denied.

The Court hereby orders DHHS to adopt fee schedules within 90 days of the entry of this Order that apply to services furnished during the relevant time period as specified by the Balanced Budget Act of 1997 and the Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000. In adopting and applying these fee schedules, DHHS should take into consideration the factors set forth in the BBA and BIPA. However, as previously discussed, budget neutrality should not be considered to the extent that it denies Plaintiffs meaningful relief.

#### C. Plaintiffs' Motion for Class Certification

Plaintiffs seek certification of a class pursuant to Fed.R.Civ.P. 23(b)(2) for their declaratory and mandamus relief claims.[12] The Court finds that Plaintiffs satisfy the requirements of Rule 23(a) and (b)(2) and that certification is proper as to Plaintiffs' declaratory and mandamus relief claims for the reasons discussed below.[13] Accordingly, Plaintiffs' Motion for Class Certification is granted.

"A class action may be maintained only when it satisfies all the requirements of Fed.R.Civ.P. 23(a) and at least one of the alternative requirements of Rule 23(b)." *Rutstein*

---

bursement produced by the methods of determining costs proves to be either inadequate or excessive"); *Sullivan v. Everhart*, 494 U.S. 83, 84–85, 110 S.Ct. 960, 108 L.Ed.2d 72 (1990) ("more or less than the correct amount").

**11.** *See supra* note 8.

**12.** Plaintiffs have invoked this Court's mandamus jurisdiction, under 28 U.S.C. § 1361, whereby a government official may be compelled to follow the law.

**13.** In consideration of *Murray v. Auslander*, 244 F.3d 807 (11th Cir.2001), and other authorities concerning the potential monetary aspect of the injunctive relief sought in the Complaint, the Court reserves the question of whether additional certification under Rule 23(b)(3) is necessary or appropriate until after adjudication of Plaintiffs' equitable claims and implementation of the Court's Order in this case.

*v. Avis Rent–A–Car Systems, Inc.*, 211 F.3d 1228, 1233 (11th Cir.2000) (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997)). In determining whether to certify a class, a court generally should not inquire into the merits of the plaintiffs' claims. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 157–58, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, "the class determination [does] generally involve considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

Plaintiffs seek to certify the following class:

> All ambulance service suppliers in the United States that provided ambulance services to Medicare eligible recipients and that were entitled to compensation for such services under a fee schedule for suppliers of ambulance services as required by the BBA of 1997.

Plaintiffs contend that for their claims under the BIPA, a subclass should be certified since anyone having a claim under the BIPA would be a member of the class asserting claims under the BBA. Given that the relief granted by the BIPA is available only to certain suppliers in certain states, there will be members of the BBA class that will not have claims under the BIPA.

### 1. Requirements of Rule 23(a)

Rule 23(a) establishes four prerequisites for certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These requirements are commonly referred to as numerosity, com-

monality, typicality, and adequacy of representation, respectively. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

#### a. Numerosity

■ Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Precise enumeration of class members is not necessary for the suit to proceed as a class action. *See Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir.1983). However, Plaintiffs must provide a good faith estimate, showing that the size of the potential class satisfies the numerosity requirement. The Eleventh Circuit, while not adopting strict numerical guidelines in this regard, has implied that a class of more than forty persons could satisfy Rule 23(a)(1). *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986).

Plaintiffs estimate that the number of class members is more than a thousand and, possibly, as many as five thousand ambulance service suppliers. This estimate, which is supported by an estimate reported by the Government, establishes the presumption of impracticality of joinder and satisfies the numerosity requirement of Rule 23(a)(1).[14]

#### b. Commonality

■ Rule 23(a)(2) requires a finding that there are "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Class relief is appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. *See Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Rule 23(a)(2) "does not require that all the questions of law and fact raised by the dispute be common ...." 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1763 (2d ed. 1987 & Supp. 2002); *see also Cox*, 784 F.2d at 1557. The

---

**14.** *See* Medicare Program; Fee Schedule for Payment of Ambulance Services and Revisions to the Physician Certification Requirements for Coverage of Nonemergency Ambulance Services, 67 Fed.Reg. 9,100, 9,129 (Feb. 27, 2002) (to be codified at 42 C.F.R. pts. 410 & 414). In this

regulation, the Government indicates that there are approximately 10,000 suppliers and providers. *Id.* While Plaintiffs represent only suppliers unaffiliated with hospitals, this Court finds that Plaintiffs' estimate that there are several thousand class members is reasonable.

Eleventh Circuit has recognized that, where allegations of wrongdoing arise from a common practice or course of conduct in relation to the class members, the class claims will involve common questions of law and fact. *Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983); *Sanders v. Robinson Humphrey/American Express, Inc.*, 634 F.Supp. 1048 (N.D.Ga.1986), *aff'd in part, rev'd in part, Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir.1987).

The common nucleus of operative facts and the common controlling legal issue in this case are clear. According to the Complaint, DHHS has thus far failed to implement uniform fee schedules effective January 1, 2000, and July 1, 2001, despite clear congressional directives to do so under the BBA and BIPA, respectively. Instead, DHHS belatedly implemented a new schedule effective April 1, 2002, which left interim periods extending from the congressionally-imposed effective dates through March 31, 2002, uncovered by the new fee schedule.

Plaintiffs seek a declaratory judgment and mandamus relief interpreting the relevant portions of the BBA and BIPA consistent with the plain language of those acts, which requires DHHS to establish uniform fee schedules complying with the BBA and BIPA and to apply the resulting schedules to services furnished during the relevant time frame. The relief sought by Plaintiffs at this juncture requires only a single determination of law, interpreting the pertinent language in the BBA and BIPA. Indeed, there are no thorny factual issues before the Court because it is undisputed that DHHS has not adopted a fee schedule for the relevant time frames and that payments for services furnished during that period were based on the previous "reasonable charge" methodology. The issue in this case is appropriate for class determination because individual actions could potentially lead to inconsistent adjudications and duties for DHHS. Because Plaintiffs share a common question of law and common facts with each putative class member, the commonality requirement of Rule 23(a)(2) is met.

*c. Typicality*

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). There must be some nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984). A sufficient nexus is established if the claims or defenses of the class representatives arise from the same event or pattern and are based on the same legal theory as the claims or defenses of the putative class members. *Id.* In this case, the legal theory advanced by Plaintiffs is the same for each and every class member and is equally capable of summary adjudication via declaratory judgment and mandamus relief.

Typicality, much like the element of commonality, is established if the representative plaintiffs' claims arise from the same practice or course of conduct and are based on the same legal theory as those of other class members. *Kornberg*, 741 F.2d at 1332; *Kennedy*, 710 F.2d at 711. To satisfy the typicality requirement, the class representatives' claim need not be identical to those of the class members. *Kornberg*, 741 F.2d at 1337. The typicality requirement "primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985). In this case, Plaintiffs' claims are substantially identical to those of the other class members. Specifically, each member of the class allegedly has been subjected to the refusal by DHHS to comply with the BBA's requirement for a congressionally mandated compensation system for ambulance services furnished to Medicare patients on or after January 1, 2000.

Typicality is not destroyed even though some individual characteristics or factual differences may exist between the class representatives and other class members. *Appleyard*, 754 F.2d at 958 ("A strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differ-

ences."). The question is whether the same unlawful conduct was directed at the Plaintiffs and the putative class members.

In this case, the same conduct, namely the failure to adopt a uniform fee schedule as mandated by Congress for the period in question, underlies the claims of each and every class member. Because the named Plaintiffs and the members of the class are unified in seeking a single declaratory judgment and injunction applicable to all ambulance service suppliers and are doing so under the same legal theory, this case clearly satisfies the typicality requirement of Rule 23(a)(3).

#### d. Adequacy of Representation

■ Rule 23(a)(4) requires that the named plaintiffs fairly and adequately protect the interests of the members of the class. Adequate representation presents two questions: (1) whether Plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs have interests that are antagonistic to the class. *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir.1985).

##### i. Adequacy of Class Representatives

The three named Plaintiffs are clearly members of the proposed class and present common and typical claims. The class definition advanced by Plaintiffs and the substance of the congressional enactments at issue avoid any element of conflict between the class representatives and members of the putative class.

The Court finds the Government's argument that some class members may be "injured" at a later date because of the prospect of lowered payments attributable to concerns of "budget neutrality" is speculative at best. Additionally, no conflict is created simply because certain potential class members may have benefitted from a system that conflicted with the law. *See Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 315 (S.D.Fla.2001) (plaintiff does not have to show other class members desire the relief sought). This is especially true when the relief sought is an order directing an agency to follow the law.

The Court finds that all ambulance suppliers that rendered services specified in the class definition are affected parties sharing common class characteristics. Therefore, there is no impermissible conflict between class members, and the named representatives are adequate under Rule 23(a)(4). The Court further finds that Coastal Transport, Inc. and Ambulance Services, Inc., who operate in North Carolina and Tennessee, respectively, are adequate representatives for the subclass asserting claims under the BIPA.

##### ii. Adequacy of Class Counsel

Adequacy of representation also requires a showing that the action will be vigorously prosecuted. The Eleventh Circuit has adopted the following standard in interpreting Rule 23(a)(4):

> We conclude ... that ... where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case. To require less would permit attorneys essentially to serve as class representatives; to require more could well prevent the vindication of the legal rights of the absent class members under the guise of protecting those rights.

*Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 728 (11th Cir.1987).

The Court is satisfied after having reviewed Plaintiffs' evidentiary submissions that proposed class counsel have extensive experience and expertise in the successful prosecution of class action litigation and are more than adequate to represent the interests of the class. The efforts of counsel for Plaintiffs thus far in this case show that they are committed to the vigorous prosecution of this action and possess the skills necessary for such a task. Plaintiffs and their counsel, therefore, are well-suited to litigate this case, and the Court is confident they will fairly and adequately protect the interests of the class, in compliance with the mandate of Rule 23(a)(4).

*2. Requirements of Rule 23(b)(2).*

 Once a plaintiff has shown that the requirements of Rule 23(a) are satisfied, the plaintiff must then show that one of the prongs in Rule 23(b) can likewise be met. In the case at bar, Plaintiffs seek to certify a class under Rule 23(b)(2). Certification is proper under Rule 23(b)(2) when the defendant "has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive or declaratory relief appropriate." Fed.R.Civ.P. 23(b)(2). Such relief must be the predominant remedy requested for the class. *Murray v. Auslander,* 244 F.3d 807, 812 (11th Cir.2001). Unlike a class certified under Rule 23(b)(3), a judgment rendered in a Rule 23(b)(2) class action is binding on all members of the class; there is no "opt out" alternative. *See Guthrie v. Evans,* 815 F.2d 626, 628 (11th Cir.1987) (noting opt out remedy in Rule 23(c)(2) does not apply to Rule 23(b)(2) class actions).

Plaintiffs in this case seek declaratory and mandamus relief requiring DHHS to fulfill its legal duty as determined by this Court. Furthermore, each member of the putative class shares a predominant and common trait—being an ambulance service supplier that has rendered services to Medicare eligible recipients, thereby entitling it to reimbursement under federal law. *See* Balanced Budget Act of 1997 § 4531; Medicaid, Medicare and SCHIP Benefits Improvement and Protection Act of 2000 § 423. Based on the foregoing, the Court therefore finds that Plaintiffs have satisfied the requirements of Rule 23(b)(2).

*3. Conclusion*

For the reasons set forth above, the Court finds that Plaintiffs have met each of the pertinent requirements of subsection (a) and (b)(2) of Rule 23. Plaintiffs' Motion for Class Certification for their declaratory and mandamus relief claims under Rule 23(b)(2) is

hereby granted and the Court certifies the following class: [15]

> All ambulance service suppliers in the United States covered by the provisions of the BBA that provided ambulance services to Medicare eligible recipients during the period January 1, 2000, through March 31, 2002.

 The Court further certifies the following subclass for Plaintiffs' claims under BIPA: [16]

> All ambulance service suppliers in the states covered by the provisions of the BIPA that provided ambulance services to Medicare eligible recipients during the period July 1, 2001, through March 31, 2002.

The Court appoints the following counsel as co-lead counsel for the above-described class and subclass:

James E. Butler, Jr., and Butler, Wooten, Fryhofer, Daughtery & Sullivan, LLP

1500 Second Avenue, P.O. Box 2766

Columbus, GA 31902; and

Jonathan H. Waller and Campbell, Waller & Poer, LLC,

Suite 450, 2100A SouthBridge Parkway, Birmingham, AL 35209.

### III. SUMMARY

To summarize, the Court denies Defendants' Motion to Dismiss and Motion for Summary Judgment, and the Court grants Plaintiffs' Motion for Summary Judgment and Motion for Class Certification as set forth hereinabove.

---

**15.** The Court exercises its discretion to modify the class definition proposed by Plaintiffs.

**16.** Rule 23(c)(4)(B) provides that when appropriate "a class may be divided into subclasses."

The Court finds a subclass appropriate in this case.